IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JOHN PITTMAN**, | ) |
| *Petitioner*, | ) |
| v. | ) |
| **ROLLIN COOK**, Commissioner, Connecticut Department of Correction, and **KENNETH BUTRICKS**, Warden, Cheshire Correctional Institution | ) Case No. 3:20-cv-626 (VAB) <br><br> ) May 28, 2020 |
| *Respondents*. | ) |

**PETITIONER'S REPLY TO RESPONDENTS' MOTION TO DISMISS**

On May 6, 2020, Petitioner John Pittman filed this petition for a writ of habeas corpus. He filed a motion for Temporary Restraining Order, and memorandum in support thereof, on May 15. On May 26, 2020, respondents filed a motion to dismiss the petition due to lack of subject matter jurisdiction. By order that same day, the Court allowed Petitioner to "file a written response to the issues raised in the motion to dismiss by 6 p.m. on Thursday, May 28, 2020, if he so desires." ECF No. 21. On May 28, 2020, the undersigned received the Respondent's Notice of Supplemental Authority in support of its motion to dismiss.

Before addressing Respondent's motion to dismiss, Petitioner wishes to note that on May 26, a seventh person incarcerated in Connecticut prisons died due to COVID-19.[1]

    **I. THIS COURT HAS THE EQUITABLE POWER TO RELEASE MR. PITTMAN FROM CHESHIRE CI WHILE HIS HABEAS PETITION IS PENDING.**

As a threshold matter, this Court has the inherent judicial authority to order Mr. Pittman's immediate release from Cheshire CI, pending a ruling on the underlying habeas petition, including on the question of exhaustion. This "inherent authority" is well-grounded in Second Circuit case law and has been exercised by district courts in light of COVID-19. *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001); *see also, e.g.*, *Savino v. Souza*, No. 20-10617-WGY, 2020 WL 1703844, at *8-9 (D. Mass. Apr. 8, 2020); *Coronel v. Decker*, 20-CV-2472 (AJN), 2020 WL

---

[1] *Seventh Conn. Inmate Dies From Covid-19*, NBC Connecticut (May 27, 2020), https://www.nbcconnecticut.com/news/local/seventh-conn-inmate-dies-from-covid-19/2277823.

1

1487274, at *8-9 (S.D.N.Y. Mar. 27, 2020). This authority "sweeps broadly across the habeas spectrum" and is available even where a petitioner "ha[s] not met the requirements for a preliminary injunction" and "pending final resolution of their habeas claims." *Martinez-Brooks v. Easter*, No. 3:20-cv-569 (MPS), 2020 WL 2405350, at *14 (D. Conn. May 12, 2020) (quoting *Basank v. Decker*, 20 CIV. 2518 (AT), 2020 WL 1481503, at *13 (S.D.N.Y. Mar. 26, 2020)).

Importantly, under this request for relief, Mr. Pittman "do[es] not seek 'release from custody,'" but rather "enlargement" of his physical custody to a halfway house or other community placement within the state. *See Martinez-Brooks*, 2020 WL 2405350, at *14. Under enlargement, "the [department of corrections] maintains custody over the defendant, but the place of custody is altered by the court." *Wilson v. Williams*, No. 4:20- CV-794, 2020 WL 1940882, at *4 (N.D. Ohio Apr. 22, 2020), *motion to stay preliminary injunction partially denied*, No. 20-3447, 2020 WL 2120814 (6th Cir. Apr. 30, 2020)).

Here, Mr. Pittman has already secured housing at his mother's home in New Haven, as well as medical services from Transitions New Haven for the period of his release, should the court grant his request.

In sum, this Court has the power to and should take the potentially lifesaving step of enlarging Mr. Pittman's custody before proceeding to Respondents' arguments regarding the underlying petition, including before resolving the motion to dismiss based on exhaustion.

## II. THERE IS NO OBLIGATION UNDER CONNECTICUT LAW TO FILE A CONDITIONS CLAIM IN A PENDING STATE HABEAS CASE, AND STATE PRACTICE *REQUIRES* THE SEPARATION OF CONDITIONS FROM CONVICTION CLAIMS

Respondent argues that the petitioner already had a "pending unexhausted state habeas petition attacking his underlying criminal conviction" at the time of the filing of the present petition. Memorandum in Support of Respondent's Motion to Dismiss (Memorandum) at p. 9. Therefore, Respondent argues, he was obligated to raise the issues contained in the present petition in the state court conviction habeas case in an "emergency motion" in state habeas court and is somehow precluded from filing a separate habeas petition going to the conditions of his confinement. This is contrary to Connecticut practice and procedure.

There is no provision the Connecticut General Statues nor the Connecticut Practice Book for such an "Emergency Motion" or "Motion for Emergency Relief" regarding conditions claims or other habeas claims. There are no trials being conducted in conditions of confinement cases, or any habeas corpus matters, in state habeas court at this time.[2]

Indeed, it is the practice of the habeas court to bifurcate cases in which petitioners combine convictions claims with conditions claims. This is for several reasons, the principal of which is

---

[2] Conn. Gen. Stats. Sec. 52-466(a) provides that a writ for petition of habeas corpus shall be filed in the Tolland Judicial District. Those matters are heard in Geographical Area 19 for Tolland, at Rockville.

2

that in Connecticut, the petitioner has a statutory right to counsel in a state habeas proceeding attacking the underlying conviction, whereas no such right exists with regard to conditions claims. *See, e.g.*, Appendix A attached hereto, JDNO Notice in HHD-CV-20-5063877 *Nunn v. Commissioner*, Order dated May 1, 2020 (bifurcating the conviction claim from the conditions of confinement claim, filed on April 9, 2020; ordering the respondent to file a responsive pleading in conditions case by May 13, 2020).

Therefore, the Connecticut Courts would not have entertained, let alone required, a conditions claim to be filed in Petitioner's pending state habeas corpus case.

### III. THIS COURT SHOULD TREAT THE PETITION AS FALLING UNDER 28 U.S.C. § 2241

This Court should find that § 2241 is the proper vehicle for Petitioner to bring his habeas petition, and therefore find that this petition is not subject to any statutory exhaustion requirements.

Because of the very nature of Mr. Pittman's petition – he is challenging the conditions of his confinement, and not his underlying sentence or conviction – this Court should construe the petition as properly brought under § 2241. Another judge in this very District held the same in another action brought by state prisoners. *See McPherson v. Lamont*, No. 20-CV-534 (JBA), 2020 WL 2198729, at *5 (D. Conn. May 6, 2020) ("Plaintiffs are challenging the current health conditions of their confinement, which, they claim, have become unconstitutional because of the COVID-19 pandemic risk. They are not attacking their underlying sentences. As such, § 2241 is the proper vehicle for their petition.").

Given the unprecedented circumstances we now face, other courts have concluded that petitions seeking relief in light of COVID-19 should be reviewed under § 2241. While Mr. Pittman alleges that the current conditions of confinement violate his constitutional rights, the main thrust of his claim is that, given the deadly pandemic, "no set of conditions would be constitutionally sufficient," and so the court should "construe the petitioner's claim as challenging the fact of the confinement" under § 2241. *See, e.g.*, *Wilson v. Williams*, No. 20-3447, Docket No. 23-1, at 4 (6th Cir. May 4, 2020).

Respondents have cited the separate case also from this District, brought under § 2241 or in the alternative Section 2254, in which the court found that the failure to exhaust state court remedies was fatal to the petition and that the exhaustion requirement is jurisdictional. *See Griffin v. Cook*, 3:20 cv-589 (JAM), 2020 WL 2735886 (May 26, 2020). There, the petitioner had brought several actions in state court before filing her federal court petition, including a Motion for Bail pending the outcome of her state court habeas, which was denied by the state habeas court, Bhatt, J. The district court held that "there is no doubt in light of Judge Bhatt's decision [denying bail] that the state courts are not closed to Griffin . . . ." *Id.* at *2. The petitioner in Griffin argued that Judge Bhatt had failed to hold the required evidentiary hearing on her bail application. The district court found that these facts undercut the petitioner's claim of futility, and that Griffin was essentially asking the court to act as a de facto appellate court of Judge Bhatt's ruling. According to the district court, the very fact that she had access to the habeas court on an application for bail

pending her habeas case demonstrated that the futility exception to the exhaustion requirement does not apply. The court noted that her underlying long-pending habeas petition is scheduled for trial in March 2021. *Id.* at \*1.

Here, the petitioner has had no such state court proceedings. His habeas petition has been pending since September 2019. There is no trial date set. The state has filed a Motion for an Order to Show Cause why the petition should not be dismissed, which is not even scheduled to be heard. The district court in Griffin focused on the fact that the petitioner does not fall within one of the established exceptions to the exhaustion requirements under § 2241. It is respectfully submitted that the Petitioner herein does meet those exceptions.

### IV. IF THE COURT APPLIES AN EXHAUSTION REQUIREMENT, IT SHOULD BE EXCUSED AS FUTILE

Even if this Court deems the petition as brought under 28 U.S.C. § 2254, or if the Court determines it should apply a prudential exhaustion requirement to § 2241, the Court must excuse any failure to exhaust as futile. *See generally* Pet'r's Br., ECF No. 11, at 17-22.

"Because Sec. 2241's exhaustion requirement is a judicial invention, it is amenable to judge-made exceptions." *McPherson*, 2020 WL 2198279, at \*6. To the extent courts have required petitioners to exhaust before bringing a § 2241 habeas claim, this requirement is exclusively judge-made and not statutory. *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 490 (1973) (describing the exhaustion doctrine in § 2241 cases as a "judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a 'swift and imperative remedy in all cases of illegal restraint or confinement'") (citation omitted). The distinction is crucial: whereas § 2254's statutory exhaustion requirement is mandatory, the prudential exhaustion requirement for § 2241 petitions is discretionary and non-jurisdictional. *Beharry v. Ashcroft*, 329 F.3d 51, 56-57 (2d Cir. 2003); *see also Mihailovich v. Berkebile*, No. 3:06-CV-1603-N, 2007 WL 942091, at \*6 (N.D. Tex. Mar. 28, 2007) ("Although prisoners generally must exhaust their administrative remedies prior to filing a § 2241 action, exhaustion of such remedies is not a jurisdictional requirement.").

Other judges in this District have waived exhaustion given the current circumstances. *McPherson*, 2020 WL 2198279, at \*7 ("Given the reality of the disease, which is spreading in Connecticut prisons, and the consequence of potentially catastrophic health outcomes, the Court concludes that exhaustion of state remedies would be futile, because, under current conditions, Plaintiffs are at substantial risk of contracting the disease prior to completing the exhaustion process."); *Martinez-Brooks et al. v. Easter et al.*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350, at \*19 (May 12, 2020) (petitioners seeking home confinement or other forms of release "have shown that that they would likely suffer irreparable harm if they were required to exhaust the administrative remedy process before seeking relief in court"). Despite the "Connecticut judiciary's best efforts in the face of an unprecedented global pandemic," *McPherson*, 2020 WL 2198279, at \*8, the state courts are functionally unavailable for Mr. Pittman to vindicate his rights and protect his health.

4

Alternatively, respondents offer no good reasons why the long-standing statutory exceptions to exhaustion under § 2254 should not apply here. That is because there are none. Section 2254(b)(1)(B) excuses exhaustion if "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." *Id.* §§ 2254(b)(1)(B)(i)-(ii). Courts have long recognized that these statutory exceptions apply where "the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). This includes situations where requiring exhaustion would subject the petitioner to inordinate delay. *See, e.g.*, *Mathis v. Hood*, 851 F.2d 612, 614 (2d Cir. 1988).

Importantly, § 2254's exhaustion rule "is not a jurisdictional requirement." *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *see also United States ex rel. Johnson v. Vincent*, 507 F.2d 1309, 1312 (2d Cir. 1974) ("The requirements of § 2254(b) and (c) are not jurisdictional."). It is thus unclear how, if at all, Respondents challenge this Court's jurisdiction over Mr. Pittman's petition. To the extent this Court construes Respondents' exhaustion arguments as a motion to dismiss for failure to state a claim, this Court must accept as true the allegations in the complaint and draw all reasonable inferences in Mr. Pittman's favor. Mr. Pittman has alleged sufficient facts that, if taken as true, demonstrate the functional unavailability of state courts at the time of filing and to state a claim for relief. Dismissing the case at this stage in the litigation is, therefore, unwarranted.

### a) This Court should evaluate futility at the time the petition was filed.

Respondents assert that Mr. Pittman has "seriously misapprehended the *current* situation in Connecticut state courts" and explain at length the "*current* state court case activity in response to the COVID-19 pandemic." Resp'ts' Br. 11 (emphasis added). These statements are both irrelevant and misleading.

The availability of state corrective processes—and whether or not exhaustion would be futile—is determined at the time the petition is filed. Mr. Pittman filed his petition on May 6, 2020. At the time, the state courts were functionally unavailable to him. Nearly all of the evidence Respondents rely on in support of their Motion to Dismiss postdates his filing; this evidence is irrelevant to the question of futility under 28 U.S.C. § 2254(b). This Court should therefore excuse exhaustion as futile at the time of filing.

The availability and effectiveness of state corrective processes for the purposes of exhaustion is determined at the time the petition is filed, not the time of briefing or argument. Indeed, the requirement that petitioners "exhaust those remedies 'available in the courts of the State'" in 28 U.S.C. § 2254(b) "refers *only* to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982) (emphasis added); *see also Brooks v. Jones*, 875 F.2d 30, 31 (2d Cir. 1989) (excusing exhaustion under 28 U.S.C. § 2254 because "the circumstances *were* such that the use of the writ would have been ineffective to protect [the petitioner's] rights in this case") (emphasis added); *Mathis*, 851 F.2d at 614 (same); *Francis S. v. Stone*, 995 F. Supp. 368, 380 (S.D.N.Y. 1998), *aff'd*, 221 F.3d 100 (2d Cir. 2000) (stating the same); 2 R. Hertz & J. Liebman, *Federal Habeas Corpus Practice and Procedure* § 23.4[a][i] (7th ed. 2015) ("The 'absence of available state corrective process' exception [under 28 U.S.C. § 2254(b)] if, *at the*

*time the petitioner files the federal petition*, there is no available state procedure by which she can secure review of the relevant claim. This exception applies even if at some earlier or later stage a remedy was or will be available . . . .").

There is good reason for this rule. Because the petitioner has an obligation to exhaust "the remedies available in the courts of the State" under 28 U.S.C. § 2254(b)(1)(A)—and the petitioner will be held in default for failing to do so—it stands to reason that the metric must be what was available to the petitioner at the time of filing, not what might become available in the future. *See Engle*, 456 U.S. at 125 n.28. This case law confirms the relevant inquiry for exhaustion under 28 U.S.C. § 2254 is whether the state courts were available and capable of providing an effective remedy to Mr. Pittman at the time he filed his petition. As discussed in this submission, they were not, and they remain functionally unavailable to this day.

### b) The scheduling of five cases on an "emergency" basis due to the pandemic does not overcome the petitioner's claim of futility

The respondent points to events that have occurred *subsequent* to the filing of the instant petition to support its position that the petitioner has "misapprehended" the situation with respect to the state habeas courts. Even if this Court were to consider post-filing evidence, Respondents' portrayal of current state court habeas processing omits key information. A full evaluation shows that the state habeas court remains unable to effectively protect the rights of hundreds of vulnerable state prisoners seeking immediate relief. Requiring Mr. Pittman to exhaust state court remedies when he does not even have a hearing date assigned, during an unprecedented global pandemic, in a notoriously back-logged system operating at limited capacity, and while a potentially fatal virus spreads throughout state prisons is incompatible with § 2254(b)(1)(B). In cases of such "inordinate . . . delay," where state courts will be unable to provide relief in time, federal courts have a duty to step in to protect federal rights. *United States ex rel. Goodman v. Kehl*, 456 F.2d 863, 869 (2d Cir. 1972).

Respondent maintains that it is "false and misleading" for the Petitioner to have alleged that the habeas court has been unavailable. Instead, Respondent claims that the habeas court has been "open and in operation" and "effectively ruling on habeas petitions filed with lightning speed" since the outbreak of the pandemic.

With respect, these claims are "false and misleading." One look at the habeas status calendar for June 5 demonstrates beyond question that dozens of <u>pending</u> habeas matters have been sitting with no action taken for months. An additional 58 habeas petitions have been docketed since May 14, the date when the court resumed accepting pro se petitions and docketing them. At least some portion of those cases are conditions cases. The Respondent wants this Court to view this enormous influx of cases as support for its claim that the petitioner herein should be required to exhaust his state remedies before coming into federal court because he does not meet the exceptions requirements under Section 2254.

It is respectfully submitted that the huge outpouring of filings since the pandemic demonstrates the opposite: that the state court is inundated and that there is no meaningful opportunity for

review of the hundreds of habeas cases pending. There are no trials being heard in habeas court at this time.

With respect to the several "emergency" matters referred to in Respondent's Memorandum, the respondent's own arguments demonstrate the opposite of its claims. The petitions were filed in April. None of these matters have even had hearings yet, notwithstanding their designation as "emergency" matters.

In *Boyd v. Commissioner*, CV20-5000611, the writ was filed on April 15, 2020. On May 1, Judge Bhatt ordered the respondent to file a responsive pleading on or before May 13 (which it did), and a hearing is scheduled for June 1. In *Murphy v. Commissioner*, CV20-5000610, the writ was filed on April 13, and the court ordered the respondent to file a responsive pleading on or before May 13 (which it did), and petitioner has until May 29 to file a reply. In *Nunn v. Commissioner*, CV20-5000609, the writ was filed on April 9, the court ordered the matter bifurcated. The respondent filed its objection on May 8, and Nunn has until June 3 to file his reply. Hearings scheduled up to eight weeks after the filing of an "emergency" writ is anything but "lightning speed."

Respondent asserts, and Habeas Clerk Stackpole alleges in her declaration, that beginning on April 15, a process began to "open, scan, review and docket" new emergency motions in habeas court. If this is so, notification was not given to our office of this. Since we are the Post-Conviction Unit of the Public Defender's Office, it is difficult to imagine how this new "process" could have been known to petitioners. Furthermore, there is no provision in the General Statutes or the Connecticut Practice Book for such a new "procedure" for dealing with "emergency" matters. No notification was given to the Public Defenders' Office regarding this new "procedure."[3]

### c) In every one of the "emergency" COVID-19 petitions filed in state court, the respondent has argued that there is no subject matter jurisdiction.

The Respondent comes before this Court arguing that the petitioner herein is required to exhaust his state court remedies before he is eligible to have his claims heard in this Court. But in each of the cases that the respondent cites as evidence that the state court is available to hear these claims "at lightning speed," the respondent has interposed technical, jurisdictional arguments and motions to dismiss. It is as if the respondent is taking the position that these inmates are at the complete mercy of their jailers. Respondent's position is that the state has no jurisdiction to hear their claims, and the federal court cannot hear the claims until the lengthy period of exhausting claims in state court.

---

[3] Indeed, as discussed herein, the courts had been closed except for priority I matters beginning on March 12, 2020. On May 7, the Judicial Branch issued a Notice that civil matters would be "resumed" for certain limited purposes. The enormous docket of pending and newly docketed cases since May 14 will begin to be addressed as of a June 5 status conference, the purpose of which is to accept filings for scheduling order or caseflow requests for a status conference with a judge, which will be scheduled on different dates. *See* Appendix B, email of Kathryn Stackpole, dated May 26, 2020.

That leaves inmates with no recourse in the midst of the worst public health crisis in at least 100 years. According to respondents, they must simply accept what is being done according to the DOC.

### d) Seeking relief in Connecticut state courts would be futile.

The Connecticut courts have been functionally unavailable since mid-March. The criminal courts were closed except for four courthouses. Those remaining open did not include the Rockville Courthouse, the Geographical Area in which habeas matters are heard. On May 7, 2020, the Judicial Branch issued a Notice that it would be "resuming" certain status matters in the civil courts. Habeas corpus is considered a civil matter in state court as in federal court.

On May 19, 2020, our office was notified that 42 cases would be placed on the court's status docket for June 5, 2020. Prior to that time, there had been no notice that any habeas matters would be heard in the regular course. All matters were to be heard virtually. On May 26, the habeas clerk revised her notice and notified our office and all assigned counsel that the cases on the June 5 status docket would be moved to July 10, and the cases that had been on the status dockets for March and April would be on the docket for June 5.

As of today, the court has 64 matters scheduled for the June 5 docket. Therefore, despite its best efforts to open and keep up with the business of the Habeas Court, it is clear that the Connecticut Judicial Branch is managing an overwhelming caseload and does not have the resources to consider the many claims being brought to its doorsteps. Dozens of these matters had been filed prior to the pandemic.

Since May 14, the habeas court has docketed 58 new petitions, 35 of which have been referred to the undersigned's office.[4] Before the pandemic even hit Connecticut, there was a backlog of at least two years, and often three years, to have a trial in Connecticut habeas court. Now that the court is in the position of hearing 64 cases for the purposes of scheduling trial dates, that time period can only increase. *See* Appendix C, docket for GA 19 Rockville, June 5, 2020, updated as of May 26, 2020.

When it comes to conditions cases, the situation is even worse. Prior to the pandemic, in September 2019, the state submitted dire statistics to the state General Assembly's Habeas Task Force concerning the fact that it overwhelmed with conditions petitions. *See* Appendix D, Submission of the DOC to the Habeas Task Force dated September 19, 2019. According to that submission, there were 270 medical and mental health care conditions cases pending, 245 Jail Credit petitions, 47 "due process" conditions cases, and 123 "other" cases (Disciplinary actions, retaliation claims, parole claims and access to court claims). Those cases were at that time being handled by ten assistant attorneys general, and the Attorney General was suggesting various remedies for what it characterized as a serious "problem."[5]

---

[4] An unknown number of those not referred to this office are conditions-of-confinement cases.
[5] The Public Defenders' Office disagrees with many of the assertions contained in that submission.

The current situation is unprecedented, to be sure, but the statutory exceptions to exhaustion were created for a reason: to ensure federal courts are available to protect federal rights when state remedies are foreclosed or "ineffective." 28 U.S.C. § 2254(b)(1)(B)(i)-(ii). If there is any moment to excuse exhaustion, it is now, when human lives hang in the balance. This Court can and should proceed to the merits of Mr. Pittman's claims.

### V.   THE COURT SHOULD NOT APPLY THE *YOUNGER* DOCTRINE

Respondents argue that this Court should decline to exercise jurisdiction over this petition based on the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971). Their assertion ignores the reality that Mr. Pittman's pending action in state court has nothing to do with the COVID-19 pandemic and that the state courts are functionally unavailable for Mr. Pittman and others to vindicate their rights.

First, Pittman's pending petition cannot be considered a "parallel" proceeding, and the undersigned seek no intervention in that proceeding. That petition attacks the integrity of Mr. Pittman's criminal conviction. It does *not* seek his release due to unconstitutional conditions of confinement and the very real risks to his life and health presented by COVID-19. Even if the petitioner *did* raise these claims in the pending state court action, they would be bifurcated into an entirely new action. *See, e.g.*, Appendix A.

Respondent cites the case of Robert Day as an example. Mr. Day fortunately won his release through other means, though he did seek "emergency" relief in the action challenging his conviction. Instead of addressing anything related to the deadly virus exploding in the state prisons, the habeas court denied his motion because he could not show a likelihood of success on the merits—i.e., that he could successfully attack his *conviction*. *See Day v. Commissioner*, TSR-CV17-4008971-S, Docket No. 136.00 (Apr. 20, 2020), attached as Appendix E.[6]

Requiring Mr. Pittman to seek "emergency" relief regarding COVID-19, in an unrelated action, only to be turned away because he cannot show a likelihood of success on the merits in *that* action would be perverse. This bar is impossible for Mr. Pittman to meet, precisely *because of the ongoing pandemic.* In light of the functional closure of the courts, he cannot engage in the discovery necessary to prove those claims. His underlying action is essentially on pause. And he cannot perform his own investigation in the field due to current restrictions.

The argument above, *see* Sec. IV, regarding the functional closure of the courts also undercuts the Respondents' argument that the state court provides an adequate opportunity for judicial review of Mr. Pittman's federal constitutional claims. That seeking relief in state court would be futile necessarily means that there is no adequate opportunity for review. Rather than looking to "leapfrog" the state courts, Mr. Pittman is seeking to protect his rights, and his life, before it is too late.

---

[6] It is noteworthy that in Day, too, the Respondent argued that the state court lacked jurisdiction to hear the claim.

### VI. THE MEASURES TAKEN BY THE DOC TO PROTECT INMATES FROM THE SPREAD OF THE DEADLIEST VIRUS IN DECADES HAVE BEEN WOEFULLY INADEQUATE

The conditions of confinement at DOC facilities have been shown to be shockingly insufficient to protect incarcerated persons from infection, serious complications, or death from COVID-19. Pandemic or no, people continue to live in crowded open dormitories and double-celled units. Indeed, Petitioner herein is housed in the TRUE Unit. At various points, the DOC has placed inmates who have been exposed to the virus in the TRUE Unit for a quarantine period, thus exposing the petitioner and others to the virus. Notwithstanding their protestations to the contrary, the sanitation practices of DOC facilities are inadequate; the DOC denies inmates even the most basic hygiene products; and they have not sufficiently complied with guidelines from the Centers for Disease Control and Prevention ("CDC") directing correctional institutions to implement mitigation efforts like social distancing and other best practices.

Instead, the DOC's primary response to the outbreak at DOC facilities has been the shocking step of transferring those inmates tested positive for COVID-19 to Northern Correctional Institution ("Northern"), a Level 5 prison designed exclusively to punish, not to serve as a medical facility. Not only has this move been roundly condemned by scores of public health experts—who say it will exacerbate, not mitigate, the virus's rampage through DOC facilities—but, tellingly, no other jurisdiction in the United States has resorted to putting people suffering from a novel, highly fatal illness in a supermax prison. And notwithstanding the use of Northern, many of those who show symptoms of COVID-19 simply continue to be denied medical care, or moved from facility to facility, meaning that Defendants recklessly expose those who are not symptomatic to those who are. At bottom, the conditions at DOC facilities have created a rapid, uncontrolled spread of COVID-19 with grave outcomes for both the incarcerated population and the surrounding communities.

The stakes here could not be higher: lives are on the line. Courts have acknowledged the gravity of the situation and relied on their equitable powers to protect people held at prisons and detention facilities during this once-in-a-lifetime pandemic. Indeed, given that large-scale outbreaks at DOC facilities are spilling over into the surrounding communities and spreading infection throughout Connecticut, petitioner's requested preliminary relief is more than justified and would impose a minimal burden on Defendants and the public at large.

Petitioner is a model inmate, who has earned only four disciplinary reports in 34 years of incarceration, and is a founding member of the TRUE Unit. We have secured a safe place for him to live in New Haven, medical assistance for him, and at the time before the pandemic erupted, even a job for him. Thus, there is very little down side to the DOC to releasing Petitioner into the community.

Defendants have consistently refused to take steps to release anyone from their custody outside of routine, cumbersome, one-by-one mechanisms meant for a non-emergency context. Even then, respondents have consistently taken the position that both the state and federal courts lack jurisdiction to hear any requests for emergency release. Respondents have even argued that

inmates are actually better off than the public at large. *See Boyd v. Commissioner*, CV20-5000611, Memorandum in Support of Respondent's Motion to Dismiss, Docket No. 103.00, at 5.

Even considering their use of Northern, Defendants' measures to screen, test, and quarantine are woefully inadequate. Not only do symptomatic people wait days for medical care, but Defendants have made no efforts to identify and isolate individuals at high risk for serious illness, those with potential exposure to the virus, or those with symptoms consistent with COVID-19. To the contrary—and notwithstanding high rates of asymptomatic and pre-symptomatic transmission—they recklessly transfer those who have been exposed to COVID-19 to other populations and facilities.

## CONCLUSION

For the foregoing reasons, Mr. Pittman respectfully requests this Court deny Respondents' motion to dismiss his petition based on exhaustion, grant his motion for a temporary restraining order, and order his immediate release.

Respectfully submitted,

/s/ Darcy McGraw (ct02369)
Director, Connecticut Innocence Project and Post-Conviction Unit
2275 Silas Deane Highway, 2nd Floor
Rocky Hill, CT 06067
Tel: 860-258-4940
Fax: 860-258-4949
darcy.mcgraw@jud.ct.gov


/s/ Evan Parzych (ct30571)
Deputy Assistant Public Defender
Connecticut Innocence Project and Post-Conviction Unit
2275 Silas Deane Highway, 2nd Floor
Rocky Hill, CT 06067
Tel: 860-258-4940
Fax: 860-258-4949
evan.parzych@jud.ct.gov


*Counsel for Petitioner*

## CERTIFICATION

I hereby certify that on May 28, 2020 a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Darcy McGraw (ct02369)
Director, Connecticut Innocence Project and Post-Conviction Unit
2275 Silas Deane Highway, 2nd Floor
Rocky Hill, CT 06067
Tel: 860-258-4940
Fax: 860-258-4949
darcy.mcgraw@jud.ct.gov


/s/ Evan Parzych (ct30571)
Deputy Assistant Public Defender
Connecticut Innocence Project and Post-Conviction Unit
2275 Silas Deane Highway, 2nd Floor
Rocky Hill, CT 06067
Tel: 860-258-4940
Fax: 860-258-4949
evan.parzych@jud.ct.gov